## 1033. WIMBERLY *v.* GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY.

1. The question as to whether a statute is, for any reason, unconstitutional will not be certified to the Supreme Court when a determination of the issues involved can be reached without a decision involving the constitutionality of the law in question.

2. (*a*) While any person who offers to buy from any railroad company a ticket to a station on the line of a connecting railroad company, and who is refused such ticket after tender of the purchase-price thereof, may, if such refusal is not authorized, maintain an action for the penalty provided by law, still the sole purpose of the act approved October 15, 1891 (Acts of 1891, p. 155), was to prevent discrimination on the part of one railroad against another railroad connecting therewith.

   (*b*) Reference may be had to the language employed in the caption of an act, in ascertaining the intent of the General Assembly and the scope and purpose of the enactment, as well as to the language employed in the body of the act itself.

3. The purpose of the above-mentioned act (now codified as §§ 2299, 2300, 2301 of the Civil Code) being solely the protection of railroad companies against unlawful discriminations arising from the refusal of a railroad company to sell tickets good for passage over a connecting line, to recover the penalty provided in § 2301 of the Civil Code it must be alleged and proved, not only that the defendant railroad company refused to sell tickets to a station or stations on a connecting line, but also that tickets to such stations had been tendered it by such connecting line to be sold for it, and that the defendant refused to place such tickets of its connecting line on sale.

4. No liability for the penalty provided by § 2301 of the Civil Code attaches to a refusal to sell the tickets of a connecting railroad com-

pany where, for any reason, it does not desire its tickets sold by other than its own agents, ·or where it has not expressed a desire that tickets to stations on its line shall be sold by another connecting therewith.

Action for penalty, from city court of Tifton—Judge Eve. February 1, 1908.

Argued April 22,—Decided December 8, 1908.

*R. S. Wimberly, John Murrow,* for plaintiff.

*John I. & J. E. Hall, Fulwood & Murray,* for defendant.

Russell, J. Wimberly brought a petition against the Georgia Southern and Florida Railway Company for the penalty of $1,000, provided by the Civil Code, §2301, for violation of §2299. The petition alleged, that the Georgia Southern and Florida Railway Company connects with the Seaboard Air-Line Railway at Cordele, and that Lumpkin is a point or station on the line of the Seaboard Air-Line Railway; that on November 11, 1907, the petitioner endeavored to buy, from the agent of the Georgia Southern and Florida Railway at Tifton, tickets to Lumpkin for himself and for two ladies who were with him, and, as payment for said tickets, tendered to the agent $10, which was more than sufficient to pay for the three tickets, the price of each being $2.70, but the agent refused to sell a ticket to Lumpkin, though he offered to sell one to Cordele or to Americus, where the plaintiff could buy one to Lumpkin from the Seaboard Air-Line Railway; that the petitioner insisted that said agent sell him a ticket to Lumpkin, but the agent stated to him that he could not and would not sell him a ticket to Lumpkin by any route, and refused to sell a ticket to Lumpkin at the rate which had previously been fixed by the Railroad Commission of Georgia, or at any rate. Upon general demurrer the petition was dismissed, and the plaintiff excepted.

1. The general demurrer, as amended, insists that the petition fails to set forth a cause of action, for the reason that §§2299 and 2300 are contrary both to the constitution of this State and the constitution of the United States. We are without jurisdiction to consider these grounds of the general demurrer; but inasmuch as a decision upon the constitutionality of the statute is not necessary to the determination of the question as to whether the court erred in dismissing the petition, even if the statute be unconstitutional, under the well-settled ruling of this court we shall proceed

to determine (presuming, as we must, that the law is constitutional, until there is a holding to the contrary) whether the allegations of the petition are sufficient to support an action under the terms. and provisions of the law.

*2. If the defendant company violated the provisions of §2299, the plaintiff is entitled, under the terms of §2301 of the Civil Code, to maintain an action for the penalty of $1,000, because, by the express terms of the latter section, either a railroad company whose road is discriminated against, or a person offering to buy a ticket; or both, may recover against the railroad company which refuses to sell the tickets of a connecting line. We are clear, however, in the opinion that the sole purpose of §2299 was to prevent a railroad company from discriminating against a connecting railroad, and equally clear that this was the only object in legislative contemplation at the time of the passage of the act of 1891 (Acts of 1891, p. 155), from which the sections 2299 and 2301 are codified. The legislature had, previously to this enactment, provided for protection of passengers and their baggage against discriminations, and this act does not attempt to amplify the previous legislation, so far as prospective passengers or patrons of the road are concerned. Having dealt with the subject of discriminations against the traveling public and shippers of freight in the acts of 1874, 1879, and 1889 (Civil Code, §§2214, 2188, 2307), the legislature, by the act of 1891, turned its attention to the prevention of discriminations on the part of one railroad company against other (perhaps weaker) railroad companies, and sought to provide a penalty which would prevent such discriminations. Nothing is better settled than that the intention of the General Assembly in the passage of a law is derivable as well from the caption of the act as from the body of the enactment itself. True, by the adoption of the code, the law is declared as expressed in the code. In other words, the code speaks the letter of the law even though in the codification the exact verbiage of the original enactment may have been altered. However, in ruling as to the precise meaning of the language employed in a statute, nothing, as we have said before, is more pertinent, towards ascertaining the true intention of the legislative mind in the passage of the enactment, than the legislature's own interpretation of the scope and purpose of the act, as contained in the caption. The caption of an act of the legislature

is properly an index to the contents of the statute as construed by the legislature itself,—a summarizing of the act, made right at the time when the discussion of every phase of the question is fresh in the legislative mind. The caption of the act of 1891, which contains all of the code sections now in question, shows that the legislature did not intend the act to have any other effect than to prevent discriminations by one railroad company as against another, and that when the General Assembly framed the caption no other class was in the legislative view or contemplation except railroad companies. The legislature's views as to the extent of the ground covered by its act as set out in the caption is, that it is "an act to further carry into effect paragraph 1 of section 2 of article 4 of the constitution of the State, and to prevent unjust discrimination upon the part of any railroad operated within or partly within this State against any other railroad company within this State." The legislature, bearing in mind that prior to the passage of this act it had already exercised the power granted by the constitution, so far as it related to unjust discriminations by railroad companies against passengers and shippers, declared the act under consideration to be a *further* carrying into effect of the constitution, and *that further purpose* to be to prevent unjust discrimination by a railroad company against another railroad company. The whole attention of the legislature for the time being was absorbed by the rights of the railroad company which might be discriminated against; the rights of passengers who might be affected were evidently considered to be merely incidental. That the act codified with the title omitted must be interpreted in the light of the title, see *Comer* v. *State,* 103 *Ga.* 69 (29 S. E. 501); *Smith* v. *Evans,* 125 *Ga.* 109 (53 S. E. 589).

3. If the sole purpose of §2299 of the Civil Code is to prevent discrimination on the part of one railroad company as against another railroad company, then it must appear that the railroad company engaged in the discrimination at least was refusing to do something that the railroad company discriminated against desired to be done. While the word "discriminate" may be defined as treating one differently from another, and while it was, no doubt, the intention of the legislature to prevent discrimination, without regard to whether the railroad company discriminated against was in fact damaged or not, still the nature and meaning of the word

"discriminate" is such that it can hardly be said that one discriminates against another by merely not doing something which that other does not want done. As related to railroads, before there can be discrimination against a particular railroad company there must be a desire expressed by it that at least as much be done in behalf of it as it is informed by the law that it is entitled to receive at the hands of another corporation. In other words, as the law requires a railroad company to put on sale tickets of a connecting line, it naturally follows that if a connecting line should desire its tickets to be sold by such other railroad company, it would tender such tickets to the other railroad company with a request that they be sold on its account. Certainly, knowledge of the law on the part of the railroad companies and their legal advisers may be presumed. Section 2299, so far as pertinent to the present point, declares that "No railroad company having an office or agency within the State of Georgia shall refuse to put on sale, or refuse to sell, any ticket of any other railroad company, with which the same may be directly or indirectly connected, at the price or rate fixed by the railroad commission of this State, for passage over lines of such connecting roads, less such amount as may be directed to be deducted from such rate by any one or more of said connecting lines." This language clearly contemplates a contingency wherein a railroad company may desire to enter into a contract with another railroad company, connecting with it, and looks to this desire to contract, and to its right to decline, if it desires, to offer to contract to make the other company its agent, as antecedent to any refusal to sell the tickets. This, as well as the fact that the rights of passengers are incidental only and dependent upon the antecedent desire of the connecting railroad company to have its tickets sold by the other railroad company, is shown by the fact that the refusal to put on sale antecedes the refusal to sell. The act must be given a reasonable construction. It is not to be presumed that the legislature intended that one railroad company should take the authority of having tickets printed, good for passage over the line of a connecting railroad company to which it sustains no other relation than mere physical connection, and sell these tickets without the knowledge or consent of the connecting company to be affected. If this had been the intention of the legislature, the use of the words "refuse to put on sale" would have

been superfluous, and the provision for a deduction at the direction of the connecting line would have been hardly necessary. Furthermore, when one carrier sells tickets good for transportation over the line of another, he thereby becomes the agent of that other; and certainly, in an act designed to prevent discrimination against a railroad company, and for no other purpose, it can hardly be said to have been the purpose of the legislature to compel a railroad company to make another its agent, when for any reason it might not desire such other to act in that capacity.

That the legislature contemplated that at least one of the connecting lines should desire to contract with the other to put on sale and sell its tickets is evidenced by the language of §2300: "No railroad company operating or doing business wholly or partly within this State shall refuse to put on sale with the agents of any other railroad company, wherewith it may be directly or indirectly connected, tickets for any point upon its lines of road, or refuse to receive such tickets for passage over its lines, or refuse to receive and transport baggage which may be checked upon said ticket so sold. Any company, so placing its tickets upon sale, may demand reasonable security, to secure the price of such tickets so placed on sale, and may demand, from time to time, such renewals of deposits, or other security, as will protect it from any loss from the sale of such tickets." Not only is the word "refuse" used in §2300, which of itself imports a request declined, but the concluding sentence of the section, which provides for the demand of reasonable security, evidently contemplates that there are contingencies in which a company might decline of its own motion, or refuse upon request, to put its tickets on sale with another connecting line, by reason of the fact that the security to protect its moneys in the hands of such other company is insufficient. We think there can be no question that there must be at least a request on the part of a connecting line that the other connecting railroad company shall put its tickets on sale, before there can be, within the meaning of the statute, either such a refusal to put tickets on sale, or refusal to sell the tickets, as would cause liability for the penalty. That penal laws must be strictly construed is an axiom of the law. To hold that the mere allegation that a railroad company had refused to put on sale or had refused to sell the tickets of a connecting line would set forth a good cause of action for the

imposition of a penalty of $1,000, when perhaps by reason of its failure to give satisfactory security in the terms of §2300 such railroad company was unable, even if it desired to do so, to sell the tickets of the connecting line, would be to place the harshest possible construction upon the language of this penal statute. While the passenger may bring the suit, the plaintiff, under the ruling in the *Conyers* case, is a mere informer, and a recovery is not for actual damages sustained. *Conyers* v. *Postal Telegraph Co.*, 92 *Ga.* 619 (19 S. E. 253, 44 Am. St. R. 100).

The comparative analysis of §§2299 and 2300, in part suggested by the learned counsel for defendant in error, strongly impresses our view that the act contemplated that at least one of the connecting railroad companies should desire its tickets to be sold by the other, and that this must appear before there could be a recovery of the penalty, though we agree with counsel for the plaintiff in error that it is not necessary to show that the effect of such refusal would work a discrimination against such company. When the act is construed in the light of its title the penalized acts set forth in Civil Code, §2299, are: (*a*) The refusal to put on sale. (*b*) The refusal to sell the tickets of another company with which it may connect. The penalized acts set forth in Civil Code, §2300, are: (*a*) The refusal to put on sale with another company its tickets. (*b*) The refusal to receive such tickets for transportation to points on its line.

From what we have said above, it follows that the purpose of the above-mentioned act (now codified as §§2299, 2300, 2301 of the Civil Code), was solely for the protection of railroad companies against unlawful discriminations arising from the refusal to sell tickets good for passage over their lines, while to recover the penalty provided in §2301 of the Civil Code it must be alleged and proved, not only that the defendant railroad company refused to sell tickets to a station or stations on a connecting line, but also that tickets to such stations had been tendered it by such connecting line to be sold for it, and that the defendant refused to place such tickets of its connecting line on sale. The statute contemplates refusal after tender or request. Consequently the trial judge did not err in dismissing the petition, inasmuch as no amendment was offered to remedy the defect.

4. Sections 2299 and 2300 being parts of the same original act,

the language employed in each throws light upon the meaning of the other. Section 2299 relates to refusal of a railroad company to put on sale or sell the tickets of a connecting line, and §2300 to refusal of a company to furnish tickets to a connecting railroad company which may desire to sell them; or if, not having refused to put them on sale with its connection, it nevertheless does refuse thereafter to accept for transportation the tickets it has furnished, this act is penalized. The statute as a whole contemplates that there may be a railroad company which desires another railroad company, connecting with it, to put its tickets on sale and sell them. If so, and the other railroad company refuses, the penalty attaches. On the other hand, the company first mentioned may not desire to place its tickets on sale or to have them sold by the other railroad company, but the latter may nevertheless desire to sell them; in such event it is made penal for the first-mentioned company to refuse to put its tickets on sale with the other company, or, after having complied with that portion of the section, to refuse to receive such tickets for transportation. The legislature also had in contemplation cases in which neither railroad company desired to have any contractual relation with the other, and in this event there could be no discrimination, so far as putting on sale the tickets of the other was concerned, if that other did not desire its connecting line to sell them. While we think that legislation could very properly be had which would require all railroads that connect to sell, for the benefit of the passenger, tickets good for transportation over both roads, so as to avoid the unnecessary inconvenience attached to the purchase of several tickets to reach a given destination, still this wise purpose was evidently not in legislative contemplation in the passage of the statute now under consideration. The provision of §2300, that one of the railroad companies can refuse to place its tickets on sale with the other, if the security for the forthcoming of the proceeds of its tickets is deemed insufficient, and the provision of §2299, providing for the direction of deductions, plainly show that the act was intended to prevent discriminations by one railroad company against another, without any regard to how passengers are affected; and while it would not be necessary to show that the discrimination resulted in any damage, it must appear that one of the railroad companies desiring to contract with the other was refused. No liability for the penalty pro-

vided by §2301 of the Civil Code attaches to a refusal to sell the tickets of a connecting railroad company, where, for any reason, it does not desire that its tickets be sold by other than its own agents, or where it has not expressed a desire that tickets to stations on its line shall be sold by another connecting therewith.

*Judgment affirmed.*