A10A2089. NORTHEAST ATLANTA BONDING COMPANY
v. STATE OF GEORGIA.
(707 SE2d 921)

BLACKWELL, Judge.

Northeast Atlanta Bonding Company appeals from a final judgment of forfeiture on three appearance bonds for which it is the surety. When an appearance bond is forfeited because the principal has failed to appear, OCGA § 17-6-71 (a) requires the court in which the bond is forfeited to promptly set a hearing on the forfeiture, and it requires the clerk to serve notice of this hearing upon the surety within ten days of the failure to appear. Until recently, the statute did not specify the consequence of a failure to comply with its notice requirement. And in the absence of explicit statutory direction, our Court held in several cases that the failure to give notice within the specified time following a failure to appear does not relieve the surety of liability for subsequent failures to appear. In other words, according to these decisions, each failure to appear affords a renewed opportunity to comply with the statutory notice requirement, and the absence of timely notice following the failure of the principal to appear on one court date does not affect the power of the court to forfeit the bond for a failure to appear on a later date. See *Griffin v. State of Ga.*, 194 Ga. App. 624, 625 (2) (391 SE2d 675) (1990); see also *Troup Bonding Co. v. State of Ga.*, 292 Ga. App. 5, 6-7 (663 SE2d 734) (2008); *Easy Out Bonding v. State of Ga.*, 224 Ga. App. 706, 707 (1) (481 SE2d 834) (1997). The trial court in this case relied on this principle when it entered a final judgment of forfeiture.

We now revisit this principle and consider whether it still is viable in the light of legislation enacted in 2009, in which the General Assembly amended OCGA § 17-6-71 (a) and, for the first time, provided that, if the required notice is not timely served, "the

---

surety shall be relieved of liability on the appearance bond." We conclude that the principle set out in *Griffin* and its progeny is inconsistent with the plain meaning of the amendment, and the amendment, therefore, effectively abrogated these earlier decisions. Nevertheless, we conclude for other reasons that the trial court did not err in this case when it entered a final judgment of forfeiture, and for this reason, we affirm the judgment below.

In January 2009, Jorge Aurelio Cordova-Bastidas was arrested on three felony warrants in Gwinnett County. Later that month, Cordova-Bastidas was released from custody after Northeast Atlanta Bonding posted bonds to secure his appearance. Cordova-Bastidas subsequently filed several pretrial motions, and the trial court set a hearing for November 20, 2009 at which Cordova-Bastidas was required to appear. For reasons that are not clear from the record, Northeast Atlanta Bonding was not served with notice of this hearing pursuant to OCGA § 17-6-70 (b).[1] When Cordova-Bastidas failed to appear at the hearing, the trial court announced that the appearance bonds would be forfeited. The trial court, however, did not set a date for an execution hearing on the forfeiture, and the clerk did not serve notice of any execution hearing upon Northeast Atlanta Bonding.

The State subsequently realized that Northeast Atlanta Bonding had not been provided notice of the November 20 hearing at which Cordova-Bastidas failed to appear, and it asked the trial court to set another hearing on his pretrial motions, so that Northeast Atlanta Bonding could be afforded proper notice and would have an opportunity to secure the principal's attendance. The hearing on the pretrial motions was rescheduled for December 9, 2009, and timely notice of this hearing was given to Northeast Atlanta Bonding. Cordova-Bastidas failed to appear on December 9, and the trial court announced again that the appearance bonds would be forfeited. This time, the trial court promptly scheduled an execution hearing, at which Northeast Atlanta Bonding would have an opportunity to show cause why judgment should not be entered on the forfeiture of the bonds. The clerk timely served Northeast Atlanta Bonding on December 14, 2009 with notice of the execution hearing.

Following the execution hearing, the trial court entered a final judgment of forfeiture against Northeast Atlanta Bonding, apparently relying on the principle that a failure to give timely notice of an execution hearing following the forfeiture of a bond for an initial

---

[1] OCGA § 17-6-70 (b) provides that "[a]n appearance bond shall not be forfeited unless the clerk of the court gave the surety at least 72 hours' written notice, exclusive of Saturdays, Sundays, and legal holidays, before the time of the required appearance of the principal."

failure to appear does not affect the power of the court to forfeit the bond for a subsequent failure to appear. The trial court found that, although the clerk failed to serve Northeast Atlanta Bonding with notice of an execution hearing within ten days of the first failure to appear on November 20, the clerk did serve such notice within ten days of the second failure to appear on December 9. Northeast Atlanta Bonding appeals from this judgment. On appeal, Northeast Atlanta Bonding urges that the trial court was required to set an execution hearing and serve it with notice of the execution hearing within ten days after the first failure to appear and that, because it failed to do so, Northeast Atlanta Bonding was thereafter relieved of liability on the bonds. In response, the State cites *Griffin* and its progeny as authority for the principle on which the trial court apparently relied. We, therefore, turn first to the continuing viability of *Griffin* and its progeny.

1. When an appearance bond is forfeited for the failure of the principal to appear, OCGA § 17-6-71 (a) requires that an execution hearing be set and that the surety be served with notice of the hearing within ten days of the failure to appear, but before the enactment of the 2009 amendment, the statute was silent about the consequence of a failure to give such notice:

> The judge shall, at the end of the court day, upon the failure of the principal to appear, forfeit the bond and order an execution hearing not sooner than 120 days but not later than 150 days after such failure to appear. Notice of the execution hearing shall be served within ten days of such failure to appear by certified mail or statutory overnight delivery to the surety at the address listed on the bond or by personal service to the surety within ten days of such failure to appear at its home office or to its designated registered agent. Service shall be considered complete upon the mailing of such certified notice.

OCGA § 17-6-71 (a) (2008). In the absence of explicit statutory direction, this Court identified — in the course of several cases and many years — three principles that governed whether a failure to comply with the statutory notice requirement entitled the surety to relief and, if so, the nature of the relief. First, strict compliance with the statutory notice requirement was not necessary, we said, and substantial compliance denied the surety any relief. See, e.g., *Northeast Atlanta Surety Co. v. Perdue*, 294 Ga. App. 32, 33-34 (1) (668 SE2d 508) (2008); *Classic City Bonding Co. v. State of Ga.*, 256 Ga. App. 577, 578 (568 SE2d 834) (2002); *AAA Bonding Co. v. State of*

*Ga.*, 192 Ga. App. 684, 685 (2) (386 SE2d 50) (1989).[2] Second, a surety was entitled to relief, we said, only if he could affirmatively show harm from the failure to comply with the notice requirement. See, e.g., *Northeast Atlanta Surety*, 294 Ga. App. at 34 (2); *Troup Bonding*, 292 Ga. App. at 7; *Griffin*, 194 Ga. App. at 625 (2).

We set out the third principle — the one on which the trial court in this case apparently relied — in *Griffin*. The principals on the appearance bonds in *Griffin* failed to appear for a particular court date, and the State initiated proceedings to forfeit the bonds, but proper notice was not given. The trial court then set another date on which the principals were required to appear, and when they again failed to do so, the State reinitiated proceedings to forfeit the bonds. This time, the clerk gave notice to the surety within 72 hours of the second failure to appear, and the trial court ultimately entered judgment on the forfeiture. 194 Ga. App. at 624-625 (2). The surety appealed, contending that the time in which notice must be given ran from the date of the initial failure to appear, not a subsequent failure to appear. We disagreed:

> The triggering dates for the applicable statutory notice and hearing provisions [are] not limited to calculation from the date of a principal's *initial* time of required appearance and failure to appear. Rather, we interpret the statute as allowing initiation of the notice and hearing procedures after *any* time of required appearance and failure to appear thereat. In this regard, had the legislature intended that the statutory triggering dates for notice and hearing were to commence only from the *initial* date of required court appearance and failure to appear, this easily could have been expressed within the statute.

Id. at 625 (2) (emphasis in original). Implicit in our *Griffin* decision is the notion that, although a failure to comply with the statutory notice requirement after the principal fails to appear for a particular court date might entitle the surety to avoid the entry of a judgment of forfeiture for *that* failure to appear, it does not relieve the surety of its continuing obligations under the bond to ensure the appearance of the principal at later dates or its continuing liability for its failure to do so. We reaffirmed this principle in *Easy Out Bonding*, 224 Ga. App. at 707 (1), and *Troup Bonding*, 292 Ga. App. at 6-7.

---

[2] *AAA Bonding* was decided under an even earlier version of OCGA § 17-6-71, which required notice within 72 hours of a failure to appear. Nevertheless, as we explained in *Classic City Bonding*, the change from seventy-two hours to ten days did not affect our understanding of the consequence of a failure to comply. 256 Ga. App. at 578.

In 2009, the General Assembly amended OCGA § 17-6-71 (a) and added, as pertinent here,[3] these provisions: "Such ten-day notice shall be adhered to strictly. If notice of the execution hearing is not served as specified in this subsection, the surety shall be relieved of liability on the appearance bond." See Ga. L. 2009, p. 688, § 2. Only last term, we acknowledged that this amendment abrogated the principles that a surety is entitled to no relief from forfeiture when there was substantial, but not strict, compliance with the notice requirements or when the surety cannot demonstrate harm as a result of the failure to comply. *A. A. Professional Bail v. Perdue*, 306 Ga. App. 72, 73-74 (1)-(2) (701 SE2d 542) (2010). Today we consider whether the 2009 amendment also abrogated the third principle described above.

The continuing viability of *Griffin* and its progeny depends, we think, on the answer to this question: What does it mean that a surety is "relieved of liability on the appearance bond"? If it means only that the surety is entitled to avoid liability for the principal failing to appear on a particular date — that is, that no judgment can be entered for the failure of the surety to ensure the appearance of its principal on that date — then *Griffin* and its progeny can be reconciled with the 2009 amendment. But if it means that the surety is forever relieved of all its continuing obligations and liabilities under the appearance bond, *Griffin* and its progeny cannot survive. That is so because, if the continuing obligations and liabilities of the surety on the bond have been extinguished altogether by the failure to give timely notice after an earlier forfeiture — if the surety has been effectively discharged — then it no longer has any obligation under the bond to ensure the appearance of the principal at a later date, and its failure to do so cannot form a basis for a forfeiture. In our view, the latter construction is the one that is most consistent with the plain meaning of the 2009 amendment, and it is, therefore, the one we are compelled to adopt.

We begin with the well-settled principle that, "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). And when we search for this intention, we always must presume that the General Assembly means what it says and says what it means. As our Supreme Court has instructed, the search for legislative intent must begin with the words of the statute, and if those words are clear and unambiguous,

---

[3] The 2009 amendment also clarified that the "clerk of the court in which the bond forfeiture occurred" is the person responsible for serving notice upon the surety and substituted electronic transmission for statutory overnight delivery as an acceptable means of service. Ga. L. 2009, p. 688, § 2.

the search also must end there. See *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010) ("When a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly.") (citation omitted); see also *Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (2) (37 SE2d 774) (1946) ("Courts of last, resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning.").

In our view, the clear and unambiguous meaning of the 2009 amendment is that, upon a failure to give timely notice following a forfeiture of the bond for the failure of the principal to appear, the surety is released and discharged of any further obligation to ensure the appearance of the principal and any further liability on the bond. To "relieve" someone means "to release [him] from a . . . duty," Black's Law Dictionary, p. 1292 (6th ed. 1990), "[t]o clear [him] from a legal obligation," Webster's New International Dictionary, p. 2105 (2d ed. 1959), and "[t]o free or clear [him] from an obligation."[4] The Compact Oxford English Dictionary, p. 1552 (2d ed. 1991). Under OCGA § 17-6-71 (a), as amended in 2009, the "duty" or "obligation" from which the surety is "released," "cleared" and "freed" is its "liability on the appearance bond," that is, its continuing liability to pay the amount of the bond upon the happening of a certain contingency, the failure of the principal to appear when required. A release of "liability on the appearance bond" is not the same as an avoidance of a particular liability for a particular failure to appear. See OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except terms of art or words connected with a particular trade or subject matter. . . ."). If the legislature had meant only to relieve the surety of its particular liability for a particular failure to appear, rather than its "liability on the appearance bond" generally, surely it would have said so.

The meaning of the phrase "relieved of liability on the appearance bond" seems clear and unambiguous, but even if it were not, our understanding of the relevant statutory language is confirmed by an examination of OCGA § 17-6-72 (b) and (c), both of which, like

---

[4] In cases involving contractual provisions by which someone is "relieved of liability" on an instrument, the Georgia courts have said that the provisions mean that the person was *released* of liability under the instrument. See, e.g., *Ansley v. Atlanta Suburbia Estates*, 230 Ga. 630, 630 (198 SE2d 319) (1973) (contractual provision that sellers "shall be relieved of liability from the existing . . . note" meant that sellers were released from liability on the note); *Stone Mountain Abstract Co. v. Alcovy Realty Co.*, 141 Ga. App. 875, 876 (2) (234 SE2d 705) (1977) (same). These cases are instructive here.

OCGA § 17-6-71 (a), relate to the forfeiture of appearance bonds. As our Supreme Court has explained,

> [i]t is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto.

*Ryan v. Commissioners of Chatham County*, 203 Ga. 730, 731-732 (1) (48 SE2d 86) (1948); see also *Butterworth v. Butterworth*, 227 Ga. 301, 303-304 (3) (a) (180 SE2d 549) (1971) (same). OCGA § 17-6-72 (b) and (c) demonstrate that the General Assembly understands that relieving a surety of its liability for a particular failure to appear, on the one hand, and relieving a surety of its continuing liability under the bond generally, on the other, are not the same thing and that the General Assembly knows how to write a statute that distinguishes between the two.

Both subsections contain language that is nearly identical to that found in the 2009 amendment of OCGA § 17-6-71 (a), and both also contain different language that unambiguously relieves a surety of particular liability for a particular failure of the principal to appear. OCGA § 17-6-72 (b) provides that

> *[n]o judgment shall be rendered on a forfeiture of any appearance bond* if it is shown to the satisfaction of the court that the principal on the bond was prevented from attending because he or she was detained by reason of arrest, sentence, or confinement in a penal institution or jail in the State of Georgia, or so detained in another jurisdiction, or because he or she was involuntarily confined or detained pursuant to court order in a mental institution in the State of Georgia or in another jurisdiction.

(Emphasis supplied.) That subsection goes on to provide that, in the event the principal is involuntarily confined in a prison, jail, or mental institution, the surety may make a demand of the clerk, prosecutor, and sheriff that a detainer or hold be placed on the principal, and if no detainer or hold is placed within 15 days, *"the surety shall then be relieved of the liability for the appearance bond."* Id. (emphasis supplied). Likewise, OCGA § 17-6-72 (c) provides that *"[n]o judgment shall be rendered on a forfeiture of any appearance bond* if it is shown to the satisfaction of the court that prior to the

entry of the judgment on the forfeiture the principal on the bond is in the custody of the sheriff or other responsible law enforcement agency." (Emphasis supplied.) In that event as well, the surety may demand that a detainer or hold be placed on the principal, and if no detainer or hold is placed within 15 days, "*the surety shall then be relieved of the liability for the. appearance bond.*" Id. (emphasis supplied).

We know that this distinction was not lost upon the General Assembly when it passed in 2009 upon the Act that amended OCGA § 17-6-71 (a), Ga. L. 2009, p. 688. Section 2 of the Act provides for the amendment of OCGA § 17-6-71 (a), adding the provision that, upon a failure to comply with the statutory notice requirements, the surety "shall be relieved of liability on the appearance bond." Section 2A of the same Act provides for an amendment of OCGA § 17-6-72, adding a provision that "[n]o judgment shall be rendered on a forfeiture of any appearance bond if it is shown to the satisfaction of the court that the principal on the bond was prevented from attending because he or she was deported by federal authorities." And even the caption of the Act reflects an awareness of the distinction:

> An Act [t]o amend Chapter 6 of Title 17 of the Official Code of Georgia Annotated, relating to bonds and recognizances, so as ... to relieve a surety from liability under certain circumstances; [and] to add a provision relating to conditions not warranting forfeiture of bond for failure to appear. ...[5]

Ga. L. 2009, p. 688.

It seems clear to us that the 2009 amendment of OCGA § 17-6-71 (a), properly construed, works a complete discharge of a surety from all its obligations and liabilities under an appearance bond whenever there is a failure to give timely notice of a forfeiture for the failure of the principal to appear, rather than a mere avoidance of a particular liability for a particular failure to appear. The legislative intent being clear, we are bound to construe the statute in a way that gives effect to it, rather than frustrates it. Because the principle set forth in *Griffin* and its progeny is incompatible with the statute as amended, our precedents must yield to the statute. We must acknowledge,

---

[5] "[T]he intention of the General Assembly in the passage of a law is derivable as well from the caption of the act as from the body of the enactment itself." *Wimberly v. Ga. Southern &c. R. Co.*, 5 Ga. App. 263, 265 (63 SE 29) (1908). See also *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 707 (10 SE2d 375) (1940) (where statute is ambiguous, its title may properly be considered in ascertaining legislative intent).

therefore, that the principle set forth in *Griffin* and its progeny no longer is an accurate statement of the law.[6]

2. Notwithstanding our holding in Division 1, we nevertheless conclude that the trial court in this case properly entered a judgment of forfeiture against Northeast Atlanta Bonding. Because the 2009 amendment abrogated the principle set forth in *Griffin* and its progeny, if notice to Northeast Atlanta Bonding was required following the first failure of Cordova-Bastidas to appear on November 20, the failure of the clerk to serve notice within ten days thereafter forever discharged Northeast Atlanta Bonding of its obligations under the bond. We conclude, however, that the failure of Cordova-Bastidas to appear on November 20 — because Northeast Atlanta Bonding had no notice of the November 20 appearance and the bonds, therefore, could not properly be forfeited at that time — did not trigger any requirement that notice of an execution hearing be served upon the surety. In the absence of any requirement to serve notice, the failure to do so had no legal consequence whatsoever. For this reason, we must conclude that the first occasion for the satisfaction of the notice requirement arose after December 9, when Cordova-Bastidas failed for a second time to appear. Because notice was given within ten days of December 9, there was strict compliance with the statutory notice requirement, and the judgment below must be affirmed.

As we understand OCGA § 17-6-71 (a), the requirements that an execution hearing be set and that notice of the execution hearing be served on the surety are triggered not merely by the failure of the principal to appear, but instead by a forfeiture of the bond as a result of the failure of the principal to appear. To be sure, if OCGA § 17-6-71 (a) were read in isolation, it would suggest that a mere failure to appear triggers the requirements of the statute: "The judge *shall*, at the end of the court day, upon the failure of the principal to appear, forfeit the bond and order an execution hearing. . . ." (Emphasis supplied.) But OCGA § 17-6-70 (b) must be considered too, and it provides that "[a]n appearance bond *shall not be forfeited* unless the clerk of court gave the surety at least 72 hours' written notice,

---

[6] We are mindful of the admonition that "courts should construe statutes in connection and harmony with existing judicial decisions *where possible*." *Parker v. Lee*, 259 Ga. 195, 198 (4) (378 SE2d 677) (1989) (emphasis supplied). But harmonizing a statute with inconsistent judicial decisions is not possible when we can readily ascertain the intent of the General Assembly, and when a construction of the statute that comports with this legislative intent brings the statute into irreconcilable conflict with those existing judicial decisions. Because the intent of the 2009 amendment is clear, and because it cannot be reconciled with *Griffin* and its progeny, the notion that the statute should be construed "in connection and harmony with" *Griffin* and its progeny must yield to the legislative intent as expressed in the plain meaning of the statute.

exclusive of Saturdays, Sundays, and legal holidays, before the time of the required appearance of the principal." (Emphasis supplied.)

We do not give an absurd construction to a statute. *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004). And in a case in which OCGA § 17-6-70 (b) absolutely prohibits forfeiture, it would be absurd to interpret. OCGA § 17-6-71 (a) as nevertheless requiring the court to attempt to forfeit a bond that cannot be forfeited, to set an execution hearing on a forfeiture on which judgment cannot be entered, and to serve the surety with notice of an utterly unnecessary and purposeless execution hearing. "People would laugh at the law if it required any such thing." *Fletcher Guano Co. v. Vorus*, 10 Ga. App. 380, 382 (73 SE 348) (1912). We conclude, therefore, that OCGA § 17-6-71 (a) requires service of notice upon a surety only when a failure to appear supplies proper grounds for the forfeiture of the bond.

Here, the record reflects that Northeast Atlanta Bonding was not given, at least 72 hours before the appearance of its principal was required on November 20, written notice of the required appearance. For this reason, the bond could not properly be forfeited on November 20, notwithstanding that the principal failed to appear. Consequently, no notice of an execution hearing was required within ten days of November 20, and the failure to serve such notice did not exonerate Northeast Atlanta Bonding of its liability under the bond.

*Judgment affirmed. Barnes, P. J., and Dillard, J., concur.*

DECIDED MARCH 18, 2011.

*Baggett & Dominguez, Niria D. Baggett*, for appellant.
*Thurbert E. Baker, Attorney General, Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.