S13Y1581. IN THE MATTER OF JACK O. MORSE.
(748 SE2d 921)

PER CURIAM.

This disciplinary matter is before the Court on a Petition for Voluntary Discipline filed by Respondent Jack O. Morse (State Bar No. 525800) pursuant to Bar Rule 4-227 (b) (2) before a formal complaint was issued. In his petition, Morse admits violating Rule 1.8 (e) of the Georgia Rules of Professional Conduct set forth in Bar Rule 4-102 (d). Although such a violation is punishable by public reprimand, Morse requests the imposition of a Review Panel reprimand. The State Bar has no objection.

Morse, who has been a member of the State Bar since 1972, admits that while representing a client in a personal injury claim, he lent the client $1,400 for the client's use in avoiding foreclosure and possible jail time for his violation of probation. Although the client repaid the loan in full, Morse admits that he violated Rule 1.8 (e). He asserts that while he has had three instances of prior discipline (having received a 90-day suspension in 1996, see *In the Matter of Morse*, 266 Ga. 652 (470 SE2d 232) (1996), and Review Panel reprimands in both 1993 and 1998 — one of which was for similar misconduct), he has had no disciplinary matters for an extended period of time. He further asserts that since 1998, he has shown a strong regard for the professional standards of conduct and asks that this Court consider, in mitigation, his cooperative attitude with

disciplinary authorities and the fact that the violation occurred as a result of him attempting to assist the client, a longtime acquaintance.

Under these specific circumstances, we agree that imposition of a Review Panel reprimand is an appropriate sanction. Accordingly, we accept Morse's petition for voluntary discipline and hereby order that Morse receive a Review Panel reprimand in accordance with Bar Rules 4-102 (b) (4) and 4-220 (b) for his admitted violation of Rule 1.8 (e).

*Petition for voluntary discipline accepted. Review Panel reprimand. All the Justices concur.*

BLACKWELL, Justice, concurring.

I concur fully in the opinion of the Court, but I write separately to remind our readers that a lawyer providing financial assistance to a litigation client is not *always* a violation of Rule 1.8 (e). With two exceptions, Rule 1.8 (e) provides that "[a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation."[1] By its plain terms, the Rule only prohibits the provision of financial assistance to a litigation client to the extent of some "connection" between the financial assistance on the one hand, and the litigation or representation on the other.[2] Absent such a "connection," a lawyer may provide financial assistance to a litigation client without running afoul of Rule 1.8 (e).[3]

This understanding not only is required by the plain terms of the Rule, but it also is perfectly consistent with the three purposes of Rule 1.8 (e). First, Rule 1.8 (e) is intended to preserve the loyalty and

---

[1] The exceptions permit a lawyer to advance court costs and litigation expenses, Rule 1.8 (e) (1), and to pay court costs and litigation expenses for a client unable to bear such costs and expenses, Rule 1.8 (e) (2). Neither exception applies in this case, however, because Morse helped his client with respect to financial obligations incurred by the client independent of the litigation in which Morse represented the client.

[2] Such a connection might exist, for instance, if the lawyer intended the financial assistance to enable or encourage the client to retain the lawyer or to prosecute the litigation, if the client actually was encouraged or enabled by the financial assistance to retain the lawyer or to prosecute the litigation, or if the lawyer and client agreed that the financial assistance would be repaid from amounts awarded in the litigation. By the way, this list of circumstances that might suffice to show the requisite connection is not intended to be an exhaustive one.

[3] Imagine a lawyer who represents her 17-year-old son in traffic court, where the son appears to answer a charge of a relatively minor traffic violation. Without the "connection" requirement, the lawyer would violate Rule 1.8 (e) simply by furnishing room and board to her son, by giving him an allowance, or by paying his school expenses during the course of the representation. No serious person would contend that the lawyer ought to be required to choose between representing her son and housing and feeding him. Indeed, "[p]eople would laugh at the law if it required any such thing." *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. App. 573, 582 (2) (707 SE2d 921) (2011) (citation and punctuation omitted).

independence that the lawyer owes to the client, loyalty and independence that might be compromised if the lawyer obtained "too great a financial stake in the litigation." American Bar Association Model Rules of Professional Conduct, Rule 1.8, comment 10. Second, the Rule is intended to "prevent clients from selecting a lawyer based on improper factors," considering that "unregulated lending to clients [might] generate unseemly bidding wars for cases." *Hernandez v. Guglielmo*, 796 FSupp.2d 1285, 1290 (1) (D. Nev. 2011). Third, the Rule is intended to restrain the pernicious practices of barratry, maintenance, and champerty.[4] See James E. Moliterno, "Broad Prohibition, Thin Rationale: The 'Acquisition of an Interest and Financial Assistance in Litigation' Rules," 16 Geo. J. Legal Ethics 223, 224-225 (2003). As I see it, financial assistance to an existing client that has no connection whatsoever with the litigation or representation of the client does not offend any of the policies that the Rule is intended to promote.

This case is a little troubling to me because it appears from the record that Morse has been a friend of his client for a long time, such that he might have provided financial assistance to his client independent of the attorney-client relationship or the litigation, and indeed, even in the absence of an attorney-client relationship or litigation. Lawyers can be generous, and it is not uncommon for lawyers to help out their kin, their friends, and their neighbors. Nevertheless, Morse has unequivocally admitted a violation of Rule 1.8 (e), and as such, he has implicitly admitted a connection between the financial assistance he provided and the litigation in which he represented his client. For that reason, I am content to join the Court in accepting his petition for voluntary discipline, and I am satisfied with the discipline that the Court has seen fit to impose.

I am authorized to state that Justice Hunstein joins in this concurrence.

DECIDED SEPTEMBER 23, 2013.

*Warren R. Hinds*, for Morse.

---

[4] At common law, barratry was "the offence of frequently exciting and stirring up suits and quarrels between his majesty's subjects, either at law or otherwise." 4 Blackstone's Commentaries on the Laws of England, p. 133 (1st ed. 1765-1769). Maintenance was "an officious intermeddling in a suit that [in] no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it." Id. at 134. Champerty was a particular species of maintenance, namely "a bargain with a plaintiff or defendant . . . to divide the land or other matter sued for between them, if they prevail at law; whereupon the champertor is to carry on the party's suit at his own expense." Id. at 134-135.

*Paula J. Frederick, General Counsel State Bar, Jonathan W. Hewett, Assistant General Counsel State Bar*, for State Bar of Georgia.