S10A0994. BAKER et al. v. WELLSTAR HEALTH SYSTEM, INC. et al.

(703 SE2d 600)

HUNSTEIN, Chief Justice.

This action originated with a medical malpractice complaint filed on March 31, 2009 by Russel Baker against Wellstar Health System, Inc., individually and d/b/a Wellstar Kennestone Hospital. To aid in its discovery, Wellstar filed a motion for a qualified protective order under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), requesting that it be permitted to conduct ex parte interviews with Baker's health care providers. After oral argument, the trial court granted Wellstar's motion, finding, under the authority of *Moreland v. Austin*, 284 Ga. 730 (670 SE2d 68) (2008), that HIPAA allows such ex parte interviews as long as specified procedural safeguards are utilized to protect patient privacy. See 45 CFR § 164.512 (e). We now review this matter on an interlocutory basis to determine whether the protective order in this

case comports with HIPAA, as we have recently construed it in *Moreland*, supra.

1. In proceedings in which a litigant's medical condition is at issue, Georgia law generally permits ex parte communications between the litigant's treating physicians and opposing counsel, under the theory that the litigant's right to medical privacy as to the condition at issue has been waived. *Moreland*, supra, 284 Ga. at 732. See also OCGA § 24-9-40 (a) ("the privilege shall be waived to the extent that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding"). However, "HIPAA preempts Georgia law with regard to ex parte communications between defense counsel and plaintiff's prior treating physicians." *Moreland*, supra at 733. Post-HIPAA, "in order for defense counsel to informally interview plaintiff's treating physicians, they must first obtain a valid authorization, or court order or otherwise comply with the provisions of 45 CFR § 164.512 (e). [Cit.]" Id. at 734.

In this case, Wellstar sought to "otherwise comply" with 45 CFR § 164.512 (e) by obtaining a "qualified protective order." A qualified protective order consists of

> an order of a court . . . that: (A) [p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) [r]equires the return to the [health care provider] or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

Id. at (1) (v). Under 45 CFR § 164.512 (e), the disclosure of protected health information[1] is authorized in the course of judicial proceedings if the party seeking the information provides "satisfactory assurance" of its "reasonable efforts . . . to secure a qualified protective order." Id. at (1) (ii) (B).

Here, Wellstar not only made "reasonable efforts" but in fact actually secured a qualified protective order, which provides as follows:

> Defendant's counsel is hereby permitted to engage in *ex parte* communications with Russel Baker's treating physi-

---

[1] Protected health information includes "any information, whether oral or recorded in any form or medium, that (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual." 42 USC § 1320d (4), (6); 45 CFR § 160.103.

cians and other healthcare providers. . . . Plaintiff's treating physicians and other healthcare providers are not required to engage in *ex parte* communications with Defendant's counsel, but they may do so at their own choosing. Plaintiff's treating physicians and other healthcare providers may discuss Plaintiff's medical conditions and any past, present, or future care and treatment with Defendant's counsel.

The qualified protective order also expressly (1) forbids Wellstar's counsel from using or disclosing Baker's protected health information outside the instant litigation and (2) requires Wellstar's counsel to either return or destroy the information received at the end of the litigation. Therefore, because the order prohibits the use or disclosure of Baker's health information for purposes other than the instant litigation and requires the return or destruction thereof at the conclusion of proceedings, it constitutes a qualified protective order as defined in 45 CFR § 164.512 (e) (1) (v). Wellstar has thus complied with 45 CFR § 164.512 (e) (1) (ii) (B), and any ex parte interviews conducted pursuant to the qualified protective order would be permitted under HIPAA.

2. Our analysis of the qualified protective order in this case, however, does not end here. Though HIPAA preempts Georgia law in its imposition of procedural requirements, see *Moreland*, supra, 284 Ga. at 733, the substantive right to medical privacy under Georgia law endures. See *King v. State*, 272 Ga. 788 (1) (535 SE2d 492) (2000) (Georgia Constitution guarantees right of medical privacy). As previously noted, a litigant may waive this right to medical privacy under Georgia law only to the extent such information is relevant to the medical condition the litigant has placed in issue in the legal proceeding. OCGA § 24-9-40 (a); *Orr v. Sievert*, 162 Ga. App. 677 (292 SE2d 548) (1982). In light of this substantive law, the qualified protective order entered by the trial court is too broad regarding the scope of information that may be disclosed. Rather than allowing Baker's health care providers to "discuss [his] medical conditions and any past, present, or future care and treatment with [Wellstar's] counsel," the order should have limited Wellstar's inquiry to matters relevant to the medical condition Baker has placed at issue in this proceeding. Without this limitation, the qualified protective order must be considered deficient.

3. (a) In the words of HIPAA's drafters, the purpose of the HIPAA privacy regulations pertinent to this appeal is "[t]o protect and enhance the rights of consumers by providing them access to their health information and controlling the inappropriate use [thereof]." 65 Fed. Reg. 82462, 82463 (Dec. 28, 2000). The situation

presented in this case — in which a court signs off on a broad, blanket order authorizing ex parte contacts with any number of unnamed physician-witnesses without further notice to the patient-plaintiff — exposes a gaping loophole in the procedural protections afforded by HIPAA in the context of litigation. Though the HIPAA drafters "presume[d] that parties [to litigation] will have ample notice and an opportunity to object [to disclosures of protected health information] in the context of the proceeding," 65 Fed. Reg. at 82530, such that the prescribed procedural safeguards would afford those parties sufficient control over disclosures therein, it is questionable whether the drafters would have considered the situation presented here as providing such "ample notice," where the patient-plaintiff is merely notified that defense counsel intends to conduct ex parte interviews with unspecified health care providers at unspecified times without further notice.

In general, the dangers associated with ex parte interviews of health care providers are numerous, including (1) the potential for unwarranted probing into matters irrelevant to the litigation yet highly sensitive and possibly prejudicial to the patient-plaintiff; (2) the potential for disclosure of information, such as mental impressions not documented in the medical record, that the health care provider has never actually communicated to the patient-plaintiff; and (3) the potential for defense counsel to influence the health care provider's testimony, unwittingly or otherwise, by encouraging solidarity with or arousing sympathy for a defendant health care provider. Thus, not only in adherence to our finding in Division 2, supra, that the qualified protective order lacks the requisite limitation under Georgia law on the scope of medical information to be disclosed, but also to enforce the spirit of HIPAA's privacy protections and to minimize the risks inherent in the conduct of ex parte interviews, we exhort trial courts, in authorizing such interviews, to fashion their orders carefully and with specificity as to scope.

(b) Specifically, in issuing orders authorizing ex parte interviews, trial courts should state with particularity: (1) the name(s) of the health care provider(s) who may be interviewed; (2) the medical condition(s) at issue in the litigation regarding which the health care provider(s) may be interviewed; (3) the fact that the interview is at the request of the defendant, not the patient-plaintiff, and is for the purpose of assisting defense counsel in the litigation; and (4) the fact that the health care provider's participation in the interview is voluntary. See, e.g., *Arons v. Jutkowitz*, 880 NE2d 831, 843, n. 6 (II)(B) (N.Y. 2007). See also Angela T. Burnette & D'Andrea J. Morning, *HIPAA and Ex Parte Interviews —The Beginning of the End?*, 1 J. Health & Life Sci. L. 73, 104-105 (April 2008). In addition, when issuing or modifying such orders, trial courts should consider

whether the circumstances — including any evidence indicating that ex parte interviews have or are expected to stray beyond their proper bounds — warrant requiring defense counsel to provide the patient-plaintiff with prior notice of, and the opportunity to appear at, scheduled interviews or, alternatively, requiring the transcription of the interview by a court reporter at the patient-plaintiff's request. See Wayne M. Purdom, *Ga. Civil Discovery*, § 5.10 (6th ed.); Burnette, supra at 104.

In sum, the use of carefully crafted orders specifying precise parameters within which ex parte interviews may be conducted will serve to enforce the privacy protections afforded under state law and advance HIPAA's purposes while at the same time preserving a mode of informal discovery that may be helpful in streamlining litigation in this State.

*Judgment reversed. All the Justices concur, except Nahmias, J., who concurs in Divisions 1, 2, and 3 (b) and the judgment, and Hines and Melton, JJ., who concur specially.*

MELTON, Justice, concurring specially.

Although I concur fully in Divisions 1 and 2 of the majority opinion, I cannot concur in Division 3 thereof. Specifically, although the majority identifies a number of statements which may be generally useful for a trial court to include in an order authorizing ex parte interviews, I do not believe these items are required to create a satisfactory order. To the contrary, I believe that a trial court's discretion in properly adapting an order to the unique facts of each case should not be constrained by a generalized laundry list derived from academic articles rather than relevant state law. In the absence of such law, the development of a list such as the one now espoused by the majority is more akin to a lawmaking process which is better left to the state Legislature.

I am authorized to state that Justice Hines joins in this special concurrence.

DECIDED NOVEMBER 1, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Jason R. Manton*, for appellant.
*Green & Sapp, Henry D. Green, Jr., Mary P. Adams*, for appellees.
*Oates & Courville, Traci G. Courville, Pope & Howard, J. Marcus Edward Howard, Carlock, Copeland & Stair, Thomas S. Carlock, Eric J. Frisch, Brian W. Looby, Donald J. Palmisano, Jr.,*

*Allen, McCain & O'Mahony, Hunter S. Allen, Jr., Simuel F. Doster, Jr.*, amici curiae.