A11A1021. McRAE v. ARBY'S RESTAURANT GROUP, INC.
(721 SE2d 602)

BARNES, Presiding Judge.

Because the Workers' Compensation Act, OCGA § 34-9-1 et seq. ("the Act"), does not compel an employee to authorize her treating physician to talk to her employer's lawyer ex parte in exchange for receiving benefits for a compensable injury, we reverse the superior court's order to the contrary in this case.

In February 2006, Laura McRae suffered third-degree burns to her esophagus at work after mistakenly drinking lye that had been left in the break room in a cup similar to the one she had been using.

---

Her employer, Arby's Restaurant Group, Inc., did not controvert McRae's workers' compensation claim and began paying income benefits in March 2006. McRae signed a Form WC-207, authorizing and consenting to the release of her medical information, which expired in 90 days, until any pending hearing, or until revoked in writing.

In September 2009, McRae's treating gastroenterologist prepared a medical narrative report in which the physician concluded that, despite "exhaustive therapy," McRae had reached maximum medical improvement and had a 65 percent permanent body impairment. In October 2009 McRae requested a hearing on her claim for temporary total disability and permanent partial disability, which was initially set for October 20, 2009, then reset to December 17, 2009, and again to February 24, 2010.

After receiving the report, Arby's attorneys tried to schedule an ex parte consultation with the treating physician, but the physician declined to meet with them absent express permission from her patient. The attorneys then moved the administrative law judge (ALJ) to remove McRae's hearing from the calendar or issue an order authorizing the treating physician to talk to them outside the presence of McRae or her attorney. The ALJ ordered McRae to expressly authorize her physician to speak with counsel for her employer, and denied McRae's request for a certificate of immediate review by the Appellate Division. In denying the request, the ALJ concluded that McRae could informally contact the treating physician herself and "inquire about any communications made between [the physician] and the Employer/Insurer."

McRae did not sign a release authorizing her treating physician to communicate with Arby's representatives without her presence, and the ALJ sanctioned her by removing her claim from the active hearing calendar until she did so. The Appellate Division of the Board affirmed, and McRae then sought judicial review in superior court, which likewise upheld the decision of the ALJ. McRae now appeals from the judgment of the superior court and argues, among other things, that the Act does not compel her to authorize her treating physician to communicate ex parte with representatives of her employer, and that her right to medical privacy is protected by both Georgia law and the Privacy Rule of the Health Insurance Portability and Accountability Act ("HIPAA").[1]

---

[1] HIPAA authorizes the Secretary of Health and Human Services to promulgate rules and regulations to ensure the privacy of personal medical information. See 42 USC § 1320d-2 (d) (2) (A). Exercising this authority, the Secretary promulgated the regulation commonly known as the "Privacy Rule," which is codified at 45 CFR § 164.500 et seq., and applies to certain individuals and organizations involved in the provision of health care, including physicians.

"[T]he substantive right to medical privacy under Georgia law endures" and is protected by the Georgia Constitution. *Baker v. Wellstar Health Systems*, 288 Ga. 336, 338 (2) (703 SE2d 601) (2010). While a litigant waives her right to medical privacy to the extent that she places her medical condition at issue, as set forth in OCGA § 24-9-40 (a), that waiver is limited to information related to the injury at issue in the litigation and any related medical history. Additionally, "the dangers associated with ex parte interviews of health care providers are numerous." Id. at 339 (3) (a). Those dangers include

> (1) the potential for unwarranted probing into matters irrelevant to the litigation yet highly sensitive and possibly prejudicial to the patient-plaintiff; (2) the potential for disclosure of information, such as mental impressions not documented in the medical record, that the health care provider has never actually communicated to the patient-plaintiff; and (3) the potential for defense counsel to influence the health care provider's testimony, unwittingly or otherwise, by encouraging solidarity with or arousing sympathy for a defendant health care provider.

Id. In other words, our Supreme Court has held that ex parte communications between a litigant's treating physician and opposing counsel should be limited.

While *Baker* involved a medical malpractice action, and this case involves a workers' compensation claim, ex parte communications should be restricted similarly in both types of cases. The same or analogous potential dangers exist in both types of cases. Further, unlike a patient who sues her doctor for medical malpractice, an employee injured on the job has no real choice in whether to participate in the workers' compensation process. If she does not participate, under the Act's exclusive remedy provision an injured worker has no recourse to compensation. Because participation is compulsory, we should be cautious in extending the employee's waiver of her right to medical privacy.

While the superior court held that the medical privacy constraints of HIPAA are "inapplicable" in workers' compensation proceedings, we disagree. There is no wholesale exemption of the requirements of the Privacy Rule in workers' compensation proceedings. To the contrary, the Privacy Rule applies in the context of such proceedings, but it expressly permits the disclosure of information "as authorized by and to the extent necessary to comply" with the

---

See generally *Moreland v. Austin*, 284 Ga. 730, 731 (670 SE2d 68) (2008).

requirements of workers' compensation laws. See 45 CFR § 164.512 (1).

But the Act does not require a physician to converse ex parte with opposing counsel to share her mental impressions or the knowledge residing in her mind. Nor is an injured employee required under the Act to authorize her physician to conduct ex parte communications with opposing counsel in exchange for continued benefits.

The Act provides that a claimant waives her right to privacy regarding related "communications . . . that the employee *has had* with any physician," and directs an authorized treating physician to disclose to the employer "all information and records" related to the employee's treatment for the injury at issue, as well as any related medical history. OCGA § 34-9-207 (a). The Act also requires a claimant to give the employer a release, directed to a particular provider, for "medical records and information" related to the claim, which expires on the hearing date if one is scheduled. OCGA § 34-9-207 (b).

A treating physician has in her possession a number of tangible documents that constitute "information" but are not "medical records," such as billing records or referrals. Nothing in the Act indicates that "information" was intended to mean anything but tangible documentation. To construe "information" to include future ex parte communications would lead to "absurd, impractical, or contradictory results," which we must avoid when construing a statute. *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999). As the amicus curiae brief of the Georgia Legal Foundation put it, to construe "information" in this context to include ex parte communication

> between doctor and defense lawyer necessarily defines "information" in a bizarre existential manner . . . as being matter residing in the mind of treating physicians, and which is ultimately expressed as a consequence of conversations and communications which take place outside the presence of the injured worker.

The legislature did not contemplate ex parte communications when drafting OCGA § 34-9-207. That Code section was added to the Act in 1991 "to facilitate the collection of medical data" and streamline the workers' compensation process. H. Michael Bagley et al., Annual Survey of Georgia Law: Workers' Compensation, 44 Mercer L. Rev. 457, 463 (1992). This new provision gave employers easier access to employees' medical records related to a workplace injury, streamlining "the determination of coverage, and . . . reduc[ing]

the potential for fraud." G. Mark Cole, Workers' Compensation: Revise Extensively the Provisions Concerning Benefits and Coverage, Employer Ratings by Insurers, the Award Process, and Other Miscellaneous Aspects of the System, 9 Ga. St. U. L. Rev. 285, 290-291 (1992). Legislators "felt that the person paying the medical bills, in this case the employer, should have access to the records," and debated "how much access was appropriate." Id. at 290, n. 40. They compromised between confidentiality and "complete access to all records of any injured employee" by allowing the employer to have access to medical records related to the claimant's injury and any history of similar injuries. Id. The statute as a whole thus provides no support for the claim that the "information" to which an employer is entitled in OCGA § 34-9-207 includes entitlement to ex parte communications.

Therefore, while the Act requires an employee to authorize her treating physician to release relevant "medical records and information," it does not require an employee to authorize her treating physician to communicate ex parte with the employer's lawyers in order to continue receiving benefits. Giving the employer's counsel unbridled access to ex parte communications with an employee's treating physicians would create numerous potential dangers, as noted in *Baker*, among them the potential to influence the physician's testimony, to probe into irrelevant but highly prejudicial matters, and the disclosure of information never disclosed to the patient. 288 Ga. at 338.

Accordingly, the Appellate Division erred in affirming the ALJ's order removing McRae's claim from the hearing calendar until she expressly authorized her doctor to speak to the opposing lawyer without her presence, and the superior court erred in affirming the Appellate Division. Whether the employer is otherwise entitled to conduct ex parte interviews under the terms of a qualified protective order is not before us at this point.

Accordingly, because a claimant is not required by our Workers' Compensation Act to authorize her treating physician to talk to her employer's lawyer ex parte in exchange for receiving benefits for a compensable injury, and because a claimant retains a right to medical privacy as to matters unrelated to her claim, we reverse the superior court's order to the contrary.

*Judgment reversed. Phipps, P. J., Ellington and Adams, JJ., concur. Miller, P. J., Doyle and Blackwell, JJ., dissent.*

MILLER, Presiding Judge, dissenting.

I have no problem with affording professional courtesies of coordinating physician interviews between counsel, and ensuring that an employee is afforded all reasonable protections. I write

separately to express my view that the holding in the majority opinion has the potential to frustrate the purpose of the Workers' Compensation Act, OCGA § 34-9-1 et seq.

> This chapter is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to this chapter concerning accidents and injuries arising out of and in the course of employment as defined by this chapter. The provisions of this chapter shall be construed and applied impartially to both employers and employees.

OCGA § 34-9-23. The Act was not intended to foster an adversarial process at the outset between an employee, employer, and insurer. Cf. *Clarke v. Samson Mfg. Co.*, 177 Ga. App. 149, 151 (1) (338 SE2d 738) (1985) (ruling that the payment of workers' compensation income benefits is not required to be the product of adversarial proceedings). Rather, the statutory scheme of the Act is intended to provide a means for the injured employee to receive prompt compensation and treatment for an on-the-job injury, without the need for protracted litigation. As acknowledged by the majority, OCGA § 34-9-207 was enacted to streamline the workers' compensation process and give employers easier access to employees' medical records related to a workplace injury. In light of the purpose of the Act, the procedures governing workers' compensation cases are not akin to the civil litigation procedures provided in the context of a medical malpractice action under *Baker v. Wellstar Health Systems*, 288 Ga. 336 (703 SE2d 601) (2010).

I am concerned that the impact of the majority's ruling may negatively affect employees who are entitled to prompt resolutions of their claims and may inhibit the employer's ability to have easy access to the employee's pertinent medical information. This may cause unfavorable delays in the workers' compensation process. For these additional reasons, I dissent.

I am authorized to state that Judge Doyle joins in this dissent.

BLACKWELL, Judge, dissenting.

I respectfully dissent. In a workers' compensation case, a physician who has treated or examined the employee must, upon the request of the employer, disclose "all information and records related to the examination, treatment, testing, or consultation concerning the employee." OCGA § 34-9-207 (a). The majority concludes today that this duty of disclosure involves only the production of written medical records and other tangible things, and it does not, therefore, authorize a physician to speak with an employer or its counsel. The

duty of disclosure is so limited, the majority explains, because "information" does not "mean anything but tangible documentation." If that were a reasonable interpretation of the statute, I might agree that the statute does not authorize the employer or its counsel to talk with the physician, inasmuch as the production of something tangible does not require any conversation.

But that interpretation of the statute is not a reasonable one. When we consider the meaning of a statute, we must afford the words of the statute their "ordinary signification,"[2] see OCGA § 1-3-1 (b), we must presume that the General Assembly meant what it said and said what it meant, see *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. App. 573, 577 (1) (707 SE2d 921) (2011), and we must bear in mind that, "[w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Six Flags Over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003); see also *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010). The relevant statute here, OCGA § 34-9-207 (a), unambiguously requires a physician to disclose not just medical records, but also "information . . . related to the examination, treatment, testing, or consultation concerning the employee."

The word "information" is generally understood to mean knowledge or data that is communicated to another, regardless of whether the knowledge or data has been memorialized in any tangible medium or exists only in the memory and voice of the person communicating it. See The American Heritage Dictionary 927 (3d ed. 1992) ("information" is "[k]nowledge derived from study, experience, or instruction" or "[k]nowledge of a specific event or situation; intelligence"); The Compact Oxford English Dictionary 847 (2d ed. 1991) ("information" is "[k]nowledge communicated concerning some particular fact, subject, or event; that of which one is apprised or told"); The New Shorter Oxford English Dictionary 1364 (Vol. 1 1993) ("information" is "[k]nowledge or facts communicated about a particular subject, event, etc.; intelligence, news"); Webster's New International Dictionary 1276 (2d ed. 1959) ("information" is "[k]nowledge communicated by others"); Webster's Third New International Dictionary 1160 (1976) ("information" is "a knowledge communicated by others or obtained from investigation, study, or instruction" or "knowledge of a particular event or situation").

---

[2] We do not always attribute to terms of art and terms "connected with a particular trade or subject matter" their ordinary signification, but instead attribute to such terms the "signification attached to them by experts in such trade or with reference to such subject matter." OCGA § 1-3-1 (b). No one in this case even suggests, however, that "information," as that term is used in OCGA § 34-9-207 (a), is a term of art or should be attributed anything but its ordinary signification.

320

There is nothing odd about defining "information" in this way. See *Moreland v. Austin*, 284 Ga. 730, 731, n. 1 (670 SE2d 68) (2008) (explaining that HIPAA protects "[h]ealth information," regardless of "whether it lies within a physician's memory or a written record"). The more odd definition is that of the majority, which limits "information" to that contained in written documents or other tangible things.[3] The majority cites no authority whatsoever for its odd definition of "information."

If a physician is required to sometimes disclose to an employer information that exists only in his mind, communicating that information in a conversation with the employer or its counsel is a natural, reasonable, and sensible way to do it. Because OCGA § 34-9-207 (a) requires a physician to disclose such information, I think, the statute implicitly authorizes the physician to speak with the employer or its counsel, and we ought to, therefore, affirm the judgment below. Because we do not, I respectfully dissent.

I am authorized to state that Presiding Judge Miller and Judge Doyle join in this dissent.

DECIDED DECEMBER 1, 2011 —
RECONSIDERATION DENIED DECEMBER 15, 2011 — ▮▮▮

*Clements & Sweet, Lawrence T. Clements, Bruce P. Johnson*, for appellant.

*Hamilton, Westby, Antonowich & Anderson, Andrew J. Hamilton, James H. Chandler*, for appellee.

*Moore, Ingram, Johnson & Steele, Robert D. Ingram, Ryan G. Prescott, Carly M. Record, Thomas A. Eaton, Todd K. Maziar*, amici curiae.

---

[3] My understanding of the meaning of "information" finds support in OCGA § 9-11-33, which governs the use of interrogatories in civil cases and requires a party to whom interrogatories are propounded to "furnish such information as is available to the party." OCGA § 9-11-33 (a) (1). Would anyone seriously contend that the word "information," as used in OCGA § 9-11-33, means only information found in written documents or upon tangible things, such that information that exists only in the mind of a party need not be furnished in response to an interrogatory? Of course not. There is no reason to think that "information" means something intangible in OCGA § 9-11-33 (a) (1) but means something tangible in OCGA § 34-9-207 (a).