IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2014 Session

## ALETHEA DEAN-HAYSLETT, AS SURVIVING WIDOW OF JERRY HAYSLETT v. METHODIST HEALTHCARE, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT00475412     Robert L. Childers, Judge

No. W2014-00625-COA-R10-CV - Filed January 20, 2015

J. STEVEN STAFFORD, P.J.,W.S., concurring.

I concur in the result reached by the majority Opinion that the trial court erred in imposing additional restrictions on Defendants' counsel with regard to the requested *ex parte* interviews in this particular case. In reaching that result, I must agree that the decision in ***Alsip v. Johnson City Medical Center***, 197 S.W.3d 722 (Tenn. 2006), clearly delineates between the requested *ex parte* interviews, now authorized by Tennessee Code Annotated Section 29-26-121(f)(1), and traditional discovery methods outlined by Rule 26 of the Tennessee Rules of Civil Procedure.

I write separately, however, to express my concern with the apparent lack of discretion afforded a trial court by Tennessee Code Annotated Section 29-26-121(f)(1).[1] From my reading of Tennessee Code Annotated Section 29-26-121(f)(1), the General Assembly has

---

[1] In its conclusion, the majority appears to distance itself from a bright-line holding that Tennessee Code Annotated Section 29-26-121(f) affords the trial court no discretion to impose any restrictions on qualified protective orders when such restrictions are not expressly authorized by the statute. The majority Opinion, however, repeatedly emphasizes that the authority to impose conditions on the grant of a qualified protective order is governed solely by the statute, rather than any inherent powers of the court, or the court's power pursuant to Rule 26 of the Tennessee Rules of Civil Procedure. As discussed *supra*, the express language of the statute includes only an extremely narrow avenue to avoid the grant of a qualified protective order. In addition, the majority Opinion, unlike the courts in other jurisdictions, discussed *infra*, offers no guidance to trial courts as to when additional conditions may be imposed on the grant of a qualified protective order. Under these circumstances, I think it fair to express my concern that the majority Opinion will be read to preclude a trial court from imposing any conditions on the grant of a qualified protective order that are not expressly authorized by Tennessee Code Annotated Section 29-26-121(f).

provided that so long as certain limitations are included in the qualified protective order, such order "shall be granted[.]" Tennessee courts have repeatedly held that the General Assembly's use of the word "shall" removes the court's discretion and instead indicates that the action governed by the statute is mandatory. *See, e.g.,* ***Bellamy v. Cracker Barrel Old Country Store, Inc.***, 302 S.W.3d 278, 281 (Tenn. 2009) ("When 'shall' is used in a statute or rule, the requirement is mandatory."); ***Bolin v. Tenn. Farmer's Mut. Ins. Co.***, 614 S.W.2d 566, 569 (Tenn. 1981) ("The general rule is that the word 'shall' ordinarily is construed to be mandatory rather than merely directory."); ***Stubbs v. State***, 393 S.W.2d 150, 154 (Tenn. 1965) (noting that by using the word "shall," the General Assembly "leaves no room for discretion"). Accordingly, so long as the stated "conditions" are met, it appears that the trial court has no choice but to grant the qualified protective order. Indeed, the General Assembly has gone so far as to state that defendants meeting the express limitations of the statute have more than the standing to seek a qualified protective order—they have the "right" to obtain one. *See* Tenn. Code Ann. § 29-26-121(f)(1).

The only exception to the broad right to a qualified protective order allows a plaintiff/patient to seek to limit or prohibit an *ex parte* interview when the plaintiff/patient can show "good cause . . . that a treating healthcare provider does not possess relevant information." *See* Tenn. Code Ann. § 29-26-121(f)(1)(B). This exception, however, is extremely narrow. From my reading, Tennessee Code Annotated Section 29-26-121(f)(1)(B) only allows a court to limit or prohibit an *ex parte* interview with a treating physician based upon a finding that the physician can offer no evidence relevant to the litigation. It provides no discretion to the trial court to place limits on *ex parte* interviews where there is high risk that irrelevant and prejudicial information could be inadvertently or intentionally disseminated, nor upon any other showing that such limitation or prohibition may be warranted based upon the facts of that particular case. By limiting the court's power to place additional restrictions on the grant of qualified protective orders, as may be necessary depending on the circumstances of each individual case, I am disquieted by the fact that Tennessee Code Annotated Section 29-26-121(f)(1) deprives the court of one of its greatest strengths—the ability to evaluate cases on an individual basis, rather than by pandemic approval or prohibition.

The practical effect of the majority's interpretation of Tennessee Code Annotated Section 29-26-121(f)(1) also comes perilously close to infringing on the inherent power of the courts.[2] As explained by the majority Opinion, it is well-settled that Tennessee courts are

---

[2] It is important to note that the appeal in this case is interlocutory in nature and confined only to the issue of whether Tennessee Code Annotated Section 29-26-121(f)(1) permits the trial court to place the discussed restrictions on a qualified protective order. Any question regarding whether Tennessee Code Annotated Section 29-26-121(f)(1) violates any constitutional doctrines is not before this Court.

afforded broad inherent authority over their court proceedings. *See **Hodges v. Attorney Gen.**,* 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). The extent of the trial court's inherent authority has been a subject of much scholarly debate. *See generally* Felix F. Stumpf, *Inherent Powers of the Courts* 1 (1994) (noting that while the inherent power of the courts has been extensively exercised, "learned writers have described the concept as . . . 'a problem of definition that has eluded or bedeviled many courts and commentators for years'") (quoting Stephen B. Burbank, *Sanctions in the Proposed Amendments to the Federal Rules of Civil Procedure: Some Questions About Power*, 11 Hofstra L. Rev. 997, 1004 (1983)). To be sure, Tennessee courts have inherent power to control their own dockets, *see **State v. Benn**,* 713 S.W.2d 308, 310 (Tenn.1986), to enforce their judgments, *see **State ex rel. Stall v. City of Knoxville**,* 365 S.W.2d 433, 435 (Tenn.1963), and to punish for contempt. *See **Baker v. State**,* 417 S.W.3d 428, 435 (Tenn. 2013). In addition, our Tennessee Supreme Court has further inherent power to "administer the rules pertaining to the licensing of attorneys," ***Skouteris v. Bd. of Prof'l Responsibility***, 430 S.W.3d 359, 362 (Tenn. 2014), "to promulgate rules governing the practice and procedure of the courts of this state," ***State v. Mallard***, 40 S.W.3d 473, 480–81 (Tenn. 2001), and to order reassignment of a case to a different judge on remand. ***Rudd v. Rudd***, No. W2011-01007-COA-R3-CV, 2011 WL 6777030, at \*7 (Tenn. Ct. App. Dec.22, 2011) (applying the rule to both the intermediate appellate court and the Tennessee Supreme Court) (citing 5 Am.Jur.2d *Appellate Review* § 754 (2007)).

Based upon the plain language of the statute, I can find no legal basis to dispute the majority Opinion's conclusion that Tennessee Code Annotated Section 29-26-121(f)(1) allows the trial court no discretion to impose the type of restrictions imposed in this case; however, I am troubled by the fact that Tennessee Code Annotated Section 29-26-121(f)(1) appears to deprive the court of its inherent power to protect the rights of litigants, *see **State v. Jordan**,* 325 S.W.3d 1, 52 (Tenn. 2010) (quoting ***State v. Lawrence***, 167 N.W.2d 912, 914 (Iowa 1969)), as well as to defend the authority and integrity of the courts. *See **Daniels v. Grimac**,* 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010 (citing ***Black v. Blount***, 938 S.W.2d 394, 397 (Tenn. 1996). Courts in other jurisdictions have held that this inherent power of protection extends to the trial court's right to "enter prophylactic orders that will protect parties' right to a fair trial." ***Munoz v. City of New York***, No. 11 Civ. 7402(JMF), 2013 WL 1953180, at \*2 (S.D. N.Y. May 10, 2013) (citing ***Constand v. Cosby***, 229 F.R.D. 472, 477–78 (E.D. Pa. 2005)); *see also **People v. Engram**,* 50 Cal.4th 1131, 240 P.3d 237, 248 (Cal. 2010) (holding that the trial court's inherent power includes the authority and responsibility to "protect and safeguard the rights and interests of all litigants with matters before the court, and to promote the fair and efficient administration of justice"). Decisions by our sister states have further indicated that courts have inherent power to protect litigants and third parties from unfair invasions of their privacy. *See **Civil Rights for Seniors v. AOC**,* 313 P.3d 216, (Nev. 2013) (holding that the judiciary had inherent power to maintain certain documents as confidential, in order to protect the privacy of program participants); ***In re***

*M.B.*, 819 A.2d 59, 62 (Pa. Super. Ct. 2003) (recognizing that courts have "inherent power to control access to their records and proceedings and may deny access when appropriate—for example, to protect the privacy rights of individuals"); *Fanning v. White*, No. 82-L-140, 1984 WL 276332, at *5 (Va. Cir. Ct. Oct. 5, 1984) (rejecting an interpretation of a statute that would "oust[] courts of any inherent power to limit inspection [of court records] to protect" the privacy of litigants and third parties); *Plaquemines Parish Comm'n Council v. Delta Dev.Co., Inc.*, 472 So.2d 560, 571 (La. 1985) (J., Lemon, dissenting) (stating that courts have inherent powers to enter orders to protect litigants from abuse or injustice, including to protect a litigant's privacy).

At least two other courts have recognized the delicate balance of power associated with the granting of these *ex parte* interviews. As such, these courts have encouraged trial judges to impose restrictions on them in order to protect the plaintiff's well-established right to medical privacy, as well as the court's ability to punish parties for failing to follow the directives of the court. For example in *Strayhorne v. Caruso*, No. 11–15216, 2014 WL 916814 (E.D. Mich. March 10, 2014), the District Court for the Eastern District of Michigan refused to allow an *ex parte* interview of the plaintiff's treating physician, citing the enormous risk to the patient/plaintiff involved with such informal practices. *Id.* at *3. As explained by the district court:

> To protect that interest, HIPAA clearly states that only "expressly authorized" protected health information may be disclosed in judicial proceedings. *See* 45 C.F.R. § 164.512(e)(1)(i). Yet one cannot expect a medical provider to know what protected information is relevant to the plaintiff's claims and what information is not relevant; thus creating the risk that confidential information will be shared even where defense counsel has not intended to elicit such information. *See Piehl* [*v. Saheta*], [No. CCB-13-254,] 2013 WL 2470128, at *2 [(D. Md. June 5, 2013)] (citing *Harlan v. Lewis*, 141 F.R.D. 107, 112 (E.D. Ark. 1992) ("The physician, largely unschooled in legal matters, cannot be expected to make the sometimes difficult determination of what matters are relevant to the plaintiff's claims. The participation of both parties' counsel in formal discovery will help to insure that these questions are resolved to the satisfaction of both parties."). Courts must strike a balance between a defendant's right to obtain health information relevant to a plaintiff's claims and HIPAA's "strong federal policy in favor of protecting the privacy of patient medical records[.]" *Thomas* [*v. 1156729 Ontario Inc.*], [No.

13–12283,] 2013 WL 5785853, at *2 [(E.D. Mich. Oct. 28, 2013)].

*Strayhorne*, 2014 WL 916814, at *3. The ***Strayhorne*** Court, therefore, ruled that *ex parte* interviews should not be allowed. Instead, the Court held that the same information could be gleaned from formal discovery practices. ***Id.***

The Georgia Supreme Court likewise recognized the high risk to the patient/plaintiff involved in *ex parte* interviews with treating physicians. *See* ***Baker v. Wellstar Health Sys., Inc.***, 288 Ga. 336, 703 S.E.2d 601 (Ga. 2010). As explained by the Georgia Supreme Court:

> In general, the dangers associated with ex parte interviews of health care providers are numerous, including (1) the potential for unwarranted probing into matters irrelevant to the litigation yet highly sensitive and possibly prejudicial to the patient-plaintiff; (2) the potential for disclosure of information, such as mental impressions not documented in the medical record, that the health care provider has never actually communicated to the patient-plaintiff; and (3) the potential for defense counsel to influence the health care provider's testimony, unwittingly or otherwise, by encouraging solidarity with or arousing sympathy for a defendant health care provider.

***Id.*** at 604. Despite these dangers, the Georgia Supreme Court ruled that *ex parte* interviews were permitted, but that qualified protective orders must be narrowly drawn to protect the patient's rights. To that end, the Georgia Supreme Court directed trial courts to:

> [C]onsider whether the circumstances—including any evidence indicating that *ex parte* interviews have or are expected to stray beyond their proper bounds—warrant requiring defense counsel to provide the patient-plaintiff with prior notice of, and the opportunity to appear at, scheduled interviews or, alternatively, requiring the transcription of the interview by a court reporter at the patient-plaintiff's request.

***Id.*** at 605.

Both ***Strayhorne*** and ***Baker*** considered the issue with regard to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which neither expressly permits or prohibits *ex parte* interviews of treating physicians. *See* ***Strayhorne***, 2014 WL 916814, at *3

("HIPAA neither permits nor prohibits such *ex parte* communications."); *see also **Baker***, 703 S.E.2d at 603 ("We now review this matter on an interlocutory basis to determine whether the protective order in this case comports with HIPAA . . . ."). In Tennessee, however, our General Assembly has seen fit to enact a statute expressly allowing such *ex parte* interviews, provided that the interview is limited to only relevant protected health information, as required by HIPAA. *See* Tenn. Code Ann. § 29-26-121(f)(1) (imposing additional restrictions). As our Supreme Court recognized in ***Alsip v. Johnson***, the question of what is relevant may be of much dispute between the parties and the ultimate arbiter of what information is relevant is the trial court. *See **Alsip***, 197 S.W.3d at 726–27. Despite this fact, both counsel for the plaintiff and the trial court are prohibited from participating in the interview due to its *ex parte*, informal nature. In this way, the statute appears to divest the trial court of both its power to protect the rights of litigants to medical privacy and its power to enforce its orders implementing the General Assembly's mandate that the interview be limited to only information relevant to the litigation.

While in this case, there is no allegation of misconduct on the part of defense counsel, I agree with the Georgia Supreme Court that this situation presents an opportunity for mischief. *See **Baker***, 703 S.E.2d at 604. By depriving the trial courts of their inherent authority to regulate the conduct of parties and enforce their rulings, Tennessee Code Annotated Section 29-26-121(f)(1) compounds the threat and leaves little hope of a remedy when its own provisions are violated. Under these circumstances, while I discern no legal basis to dissent from the majority's holding, given the current state of the law, I write separately to express my belief that this decision may constitute a step backward in patient privacy jurisprudence.

_____
J. STEVEN STAFFORD, JUDGE